Hefferan v. Ethicon Endo Surgery Good morning. Judge Boggs, I'd like to reserve four minutes for oral arguments. Four minutes, you may. May it please the Court, my name is Sarah Strickland. I'm here on behalf of the plaintiffs' appellants Brendan Hefferan and Sabine Hefferan. This appeal involves the District Court's abuse of discretion in dismissing Mr. Hefferan's products liability action against two U.S. companies on forum non-convenience grounds in favor of a proceeding in Germany. We submit that the District Court abused its discretion in three important ways. First, the District Court expressly assigned, quote, less deference to Mr. Hefferan's choice of a forum in the United States. Second, the District Court abused its discretion in improperly weighing the relevant public and private interest factors in deciding the conveniences between, the balance of conveniences between a U.S. forum and a German forum. Third, the District Court failed to consider the numerous drastic procedural and substantive differences between a German forum and a U.S. forum and failed to give adequate weight to the factor that litigating this case in Germany would be cost prohibitive for the plaintiffs. Would be what? Cost prohibitive. Cost prohibitive. For the plaintiffs in Germany. A dismissal on forum non-convenience grounds is only appropriate when the moving defendants establish both that there is an adequate alternative foreign forum and that the balance of private and public factors reveal that a trial in that foreign forum would be most convenient and that a trial in the United States would be unduly burdensome for the defendants or the court. You just used the phrase would be most convenient. Do you mean more convenient or what's the most? Yes, Your Honor. More convenient. What do you measure most against? Yes, Your Honor. You're correct. It's more convenient and the burden is on the defendant, the moving defendant, who is trying to dismiss the case in favor of a foreign forum to prove that a forum here in the United States would be unduly burdensome for them or the court. In analyzing the conveniences and burdens to the parties in the court, a court faced with the forum non-convenience motion must examine the private and public interest factors set forth by the Supreme Court in the Gulf Oil case, and they must do so bearing in mind that there is a strong presumption in favor of the plaintiff's choice of forum. When the plaintiff is a U.S. citizen, like the plaintiff here, Mr. Heffron, the choice of forum is entitled to heightened deference. In light of the strong presumption in favor of the plaintiff's chosen forum and the fact that the forum non-convenience motion results in the harsh result of a dismissal in an otherwise properly venued case in the United States, the defendant has a heavy burden to prove that a trial here in the United States. Because the plaintiff is an American. In any case, Your Honor, but particularly when the plaintiff is an American. Doesn't that, particularly because he's American, apply less strongly when it's an American living abroad? Well, Your Honor, the cases seem to focus more on U.S. citizenship rather than residency. Right, but the cases are decided in the context of particular cases as well. Yes, Your Honor. It's not an on-off switch. It's a factor that you look at, and the factor can apply more strongly or less strongly. Or am I wrong? Well, Your Honor, in this case, the district court specifically assigned less deference to Mr. Heffron, so... Less than what? There certainly are cases... Pardon me. Go ahead. There certainly are cases that mention the question of a foreign domicile even though it's a U.S. citizen, aren't they? That is, it's not something that Judge Black just thought up out of the air. Well, Your Honor, there are cases in which the plaintiff was, for a time, living not in the forum that he brought suit. And in those cases, even when someone isn't residing in the forum in which they brought the lawsuit, they were still entitled to heightened deference. For example, in... I mean, I'm agreeing with Judge Rogers that it's not an off-on switch, but it is a factor. Correct. Correct, Your Honor. Well, but the factor applies less strongly here, is what I'm saying, than in a case where the person was living back in the United States and brought suit, like in Doha, right? So the person is living over there, it's a person who lives over there and has his business over there and really has no, there's no indication that he's coming back. If you can look generally at the reason for the tilt or the presumption, that reason applies less strongly than it otherwise would in this case, I guess is what I'm asking, doesn't it? Well, Your Honor, I guess you have to look at the reasoning for the presumption for a U.S. citizen. I guess that's right, and the reasoning has to do with convenience, mainly, and it also has to do with the likelihood that there's been forum shopping. So if it doesn't look like the most convenient forum, maybe you're picking the other forum because it's more lucrative. Whereas if you would, if you've already moved back to the United States, you naturally, you call your lawyer and they want to sue locally, it doesn't, it isn't so obvious that they're doing it because they're picking the most lucrative forum, right? Those I would take to be the reasons. Do you think there are other reasons for the preference? Well, yes, Your Honor. I would say that a U.S. citizen attempting to avail himself of the U.S. court system and the . . . Well, but you're . . . As we've said . . . Why? I mean, the forum nonconvenience test applies sometimes. You don't have a right to have it decided in your case if the forum nonconvenience . . . decided in your jurisdiction. If the forum nonconvenience doctrine sends it somewhere else, do you? It's not a constitutional right.  So, it's a preference or a tilt or a, I don't know what the word, what the jargon word is, but you look, you normally rule that way when you can for a reason. And the reason can't be that we have this rule. I mean, there has to be a reason for the rule. The reason for the rule can't be because we have this rule, right? Of course. I tried to suggest some reasons for the rule. Are there other reasons for the rule? Well, I think if you consider why litigating in the United States would be most preferable for a U.S. citizen, you could look to just being more comfortable with the U.S. court system and obviously litigating in a place in which you understand the language and your attorneys understand the language. Well, that would be less strong if you were a domiciliary of the foreign jurisdiction, wouldn't it? Well, I think you could also look to the ties to the United States of the particular individual. He had lived in Germany for, what, 12 years. The wife was a German background national citizen, so sort of they're not going to be litigating in a place that would be, that they couldn't understand the language. That's pretty clear, isn't it? Well, yes, Your Honor, but if you look at the ties to the United States, Mr. Heffron was born and raised near Grand Rapids. He served in the U.S. military. He was stationed here. He moved to Germany for work and may move back to the United States. And as he said in his declaration in the court below, he feels most comfortable with availing himself of the courts of the United States. Let's say that we give you this point that there should be some deference to the choice of forum here, and he's an American even if he's living in Germany. What about some of the other factors? I mean, in particular, what is your position regarding whether German law would apply in any case, whether it's going to be tried in the United States or whether it would be tried in Germany? Well, Your Honor, looking at the New Jersey choice of law analysis, which I believe we're bound to do in this case because the case started in the New Jersey District Court, it's a – you look to the factors outlined in Section 145 of the restatement. And although in that restatement you do start with a presumption that the law of the place of injury applies, there are other factors set forth in Section 145 that have to be considered and can be used to overcome that presumption. And I would submit that in this case, the other factors do, in fact, overcome the presumption. Would you agree that if German law did apply or if it appeared likely that German law would apply, that would tend to undercut a lot of the inconveniences of trying the case in Germany? Well, I submit, Your Honor, that cases have acknowledged that applying foreign law can be a factor weighing in favor of dismissal. However, it's not necessarily a strong factor, and it on its own is not sufficient to overcome the heightened preference for the forum's choice of – I'm sorry, the plaintiff's choice of forum. Looking also to the District Court's review of the public and private interests in this case, I think it's important to take a look and realize that the District Court did not analyze the substance of the dispute between the parties and focused almost exclusively on the location of the witnesses that were listed in the parties' initial disclosures. The substance of the dispute is that it's a products liability case involving a U.S. corporation, that is, Ethicon, that is based in Ohio. And accordingly, the witnesses and the documents with regard to – that would bear most pertinently on the design and distribution and sale of the product at issue are all located in Ohio. There are witnesses in Germany, including the plaintiffs. The plaintiffs, of course, could come here to provide testimony. But really, there's only one potentially critical witness in Germany, and that would be the surgeon who performed the particular procedure. However – Aren't there a whole bunch of medical staff who were there as well? The surgeon would be particularly important, but everything that happened during the operation – because as I take it, the basic factual allegation here is that, yes, the stapler failed or malfunctioned or was badly designed or whatever, but it wasn't like it just blew up sitting in the corner. It was in the course of an operation, so the question is how the operation went. I presume a lot of the defense is going to be either that the operators were bad or things of that sort, and what the political reporters call the tick-tock, the minute-by-minute activity, is all in the hands of these German witnesses. Is that fair? Well, yes, Your Honor. There was one German surgeon, and there was a resident involved in the particular surgery as well, and he did obtain follow-up surgery in Germany. Am I wrong? I thought there were a number of other witnesses in the operating room or near the operating room that were disclosed. Is that wrong? There were other surgeons that did his follow-up surgery, so perhaps that's what you're thinking. Wouldn't the follow-up surgeons be necessary witnesses and possibly also other doctors that saw Mr. Hefferon regarding his recovery and his treatment and his damages? Well, they would be relevant witnesses, Your Honor, as to damages, and there's two points to be made. Number one, Mr. Hefferon has reached out to all those physicians, and they all said that they'd be willing to give testimony for this case. And the other issue is that those are primarily damages witnesses, and if for some reason Mr. Hefferon cannot obtain their testimony for this case, it's really to the plaintiff's detriment. They're not critical witnesses as to the liability in this case. All of the liability witnesses we submit are located in Ohio, and the district court did not take a look at what evidence is actually located in Ohio. Any other questions, judges? No. Thank you. You'll have your four minutes for rebuttal. Thank you. Good morning, Your Honor. May it please the Court, David Abernethy for the Appellees and Defendants Ethicon Endosurgery and Johnson & Johnson. I'm accompanied this morning by my co-counsel, Ms. Citrullo, but she has graciously deferred to me to argue for the appellees. The cases are clear, and both sides agreed that a motion to dismiss for forum nonconvenience presents a fact-specific issue where the district judge has to weigh the relevant facts and factors and exercise discretion in determining whether the interests of justice and the convenience of the parties dictates trial of the case in another jurisdiction, assuming that jurisdiction is available and adequate. And the cases are equally clear that that discretionary determination can only be reversed upon a showing of a clear abuse of discretion. Your Honor, in this case, the record and the opinions show that the district judge weighed the relevant factors in detail, looked at the relevant facts, applied the correct legal standard, and correctly determined that it was appropriate to require the plaintiffs to sue in Germany, given that Mr. Hefferan is a 13-year resident of Germany, still lives there with no definite plans to return. His wife and co-plaintiff is a German citizen and resident. He was injured in Germany in the course of surgery he chose to have in Germany, allegedly as a result of a defect in a medical device sold in Germany, selected by the German surgeons, and used in Germany. Designed in Ohio. Designed in Ohio. The design that caused the injury, right? If the design didn't meet the standards? Well, that's the allegation and that's the question. And who's going to testify about that? People who are involved in the design. If, for instance, they said, well, we could design it this way, but it would be expensive. Instead, we'll design it that way because it's cheap. That evidence would all be in Ohio, right? It would, Your Honor, with one caveat. There is a manufacturing defect claim in the case. The product is manufactured by another entity in Mexico. So there may be... Any indication before the district judge whether this is a design rather than a manufacturing defect? All we have is the complaint, or is there any basis that the district court... I mean, if it's a manufacturing defect, or if whether it's a defect is demonstrated by how it worked, something like res ipsa loquitur, then you would think, oh, the German witnesses will be the key ones. But if it's like the Ford Pinto or something, then all the evidence is going to be in Ohio. There's nothing in the record which shows which kind of case this is. Do you see what I'm asking? I see the question, Your Honor. And to answer it as directly as I can, first, all we have are the allegations. So it's impossible to be certain now whether the case will be tried on a design or manufacturing defect theory or both. But they're both in the case. No question the defect... The district judge, in exercising his discretion, just had to punt on that issue. It might have been something where all the relevant evidence, where most of the relevant evidence that's going to make or break the case is in Germany, or it might be that most of the evidence that's going to make or break the case is in Ohio, and the judge just has to decide without really knowing. I don't think that's quite the case, Your Honor. I think it's clear that there's relevant evidence in this district. There's certainly going to be relevant evidence to at least one theory. In both districts, there's going to be some relevant evidence. There's certainly relevant evidence in Germany. There's relevant evidence here. I think the district court was correct in concluding that, on balance, the case should be tried in Germany because, in fact, all of the evidence that the plaintiff needs is accessible to the plaintiff. First, and this is a kind of an obvious fact, maybe, but perhaps not as highlighted as clearly in the briefing as it might have been, the company that designed and markets the device, Ethicon Endosurgery, Inc., which is in this district, is going to be in the jurisdiction of the German court. We have to submit to that court and did as a condition of the dismissal. That German court, therefore, will have the ability to require the production of evidence that's in the control of Ethicon Endosurgery for a trial in Germany. Even if there's evidence here in the United States that isn't entirely in the control of Ethicon Endosurgery, it's a little difficult to see what design evidence wouldn't be in our possession that the court in Germany could require us to produce. But even if there was other evidence, as the district court correctly pointed out, they can get that evidence for the German trial by resorting to the procedure in Title 28 of the U.S. Code, Section 1782. We stipulated in the court below that it would be proper for them to obtain evidence in the U.S. for a German trial through the use of that procedure. It works the other way, too. I mean, so there's ways you can get evidence from the other jurisdiction in international tort litigation. The question is whether it's more convenient or not, right? I think the district court was well within its proper discretion in concluding that the balancing of conveniences tipped very strongly in favor of the defendants here. It kind of depends at bottom on what the key issues are, doesn't it? Well, that's right. But what do we do when we don't know? We know this much, Your Honor. I think this is clear. This is an injury that occurred in surgery with this device. So we know what the question is. There was a defect in the device, whether design or manufacturing, or the surgeon didn't use the device properly, or the circumstances or the condition of the patient were simply such that despite the surgeon's best efforts and a properly designed and manufactured device, the injury occurred. But the critical... You can just say that, but I mean, what if the whole issue is whether they designed it carelessly or not? What if there's not too much dispute as to how the injury occurred, the dispute as to whether the stapler should have been the kind of stapler that stapled up rather than stapled down? I don't know what the stapler options are when you're designing a stapler. Your Honor, I think... You see what I'm saying? You just sort of state authoritatively that all the relevant key evidence is going to be what you observe when the operation occurred, which might well be, but it might also all turn. It's conceivable that it all turns on what happened when they were designing this on the designing boards, all the negligence, all the carelessness. Your Honor, I'm not contending... You see what I'm saying? I see what you're saying, but I'm not contending, and we did not contend below that there's no relevant evidence in the U.S. and that the only relevant evidence is in Germany. What we do contend is, first, clearly there's critical evidence in Germany because the surgeon and the surgical team are the only people with direct firsthand knowledge of what actually happened in the surgery in which the injury occurred. Second, all of the evidence that's required in the United States is available to the plaintiff either through the German court's jurisdiction over the maker and seller or through the statutory procedure. But by contrast, we can't bring the surgeon to a U.S. trial. We can seek a deposition of the surgeon under the Hague Convention. It's limited in scope. It's subject to the supervision of the German courts. It has to be... It's just the way it works, though. I mean, the Hague Convention works, doesn't it? It takes a little longer. Well, the Hague Convention works. You can get testimony. You can't get documents from Germany because they don't allow the use of the Hague Convention to obtain the production of documents. Under aerospace, you can order the defense to produce documents. Well, we could be ordered to produce documents. The plaintiff could be ordered to produce documents within his control if he was suing in the U.S. If there were other documents in Germany that proved to be relevant to the theories in the case, we can't obtain those because if the plaintiff doesn't control them, he can't produce them. Isn't the plaintiff saying that they've consented to make themselves available and one would assume also any records they have? The plaintiffs have... Well, the plaintiffs, obviously, if the case is tried in the U.S., will have to testify here. They've certainly consented to give us all of the medical records within their control. So that's not the issue. The issue is other evidence in the hands of third parties. And the critical third parties here, the people who know what actually happened to Mr. Hefferon, are the German doctors, at least 13 identified in the plaintiff's disclosure. And I want to note one thing about... I thought you said those doctors had agreed to cooperate. I don't think that's established by... In fact, I don't think there's any evidence in the record. What's in the record is a statement by Mr. Hefferon. I've spoken to the doctors. He doesn't specify exactly which ones. And they've agreed to cooperate. To do what? To testify in Germany? To give a complete deposition? To give a deposition on some issues? It's not enforceable what he's... You could get the equivalent of that under the Hague Convention, though, couldn't you? It's just that it would be interviewed by the judge rather than by the attorneys and some other formal differences. And I think, Your Honor, that goes to a very important point and a very valid point that the... The answer is yes, though. Yes. You can get testimony within the scope of the letter of requesting from the U.S. court. You get someone to draft a good letter of request, Germany's a pretty solid partner in respect to that kind of stuff. I mean, they don't have a flighty judicial system. I mean, they have a regular judicial system. If they get the appropriate kind of letter of request, they'll have a hearing and take that evidence, won't they? I believe that we can get evidence. The exact scope of that evidence is hard to be sure. But, Your Honor... That's always the case, probably. Even in a deposition in Ohio, you're not always sure what you're going to get. That may be, Your Honor, but two points. First of all, one important point that I think the district judge made that's a very valid point. If the case is litigated here, the parties are litigating on an unequal playing field because the plaintiff gets plenary U.S.-style discovery of the defendants and any third-party witnesses or sources of information in the U.S., we don't get that in Germany. We have a much more restrictive ability to get evidence. Not saying we can't get any evidence, but the playing field clearly isn't level. If Mr. Hefferon sues where he lives, where he lives and where the injury happened, both parties are on a level playing field. Any critical witnesses that either party controls can be brought to trial and the German doctors who have the most direct knowledge can be brought to trial, along with any defense witnesses that the German court tells us to produce. I don't think also, Your Honor, that it's reasonable to dismiss much of the German proof as, well, they're just damages evidence. First, the doctors have knowledge of what actually happened. That goes to liability. But I have to say my client, if we are held liable, is certainly going to be very concerned about how we're going to defend a damages claim. So that evidence is a critical part of the case and it's just as important as any other evidence in the case. The balancing of what are the conveniences in Germany, how can the case be fairly tried in Germany, how can the case be fairly tried in the U.S., presents some debatable issues. But again, Your Honor, that balancing was committed to the discretion of the district court and only if his judgment about the relative conveniences is a clear abuse of discretion can his decision in that respect be reversed. What about the weight that the court gave to the choice of the forum by the plaintiff here? Well, several arguments about that. And first, Your Honor, I think, although we argued below and here that the heightened deference that the plaintiff is calling for isn't required on the facts of this case. In fact, if you go back to the district court opinion, the district court on the third page of his opinion in the very first statement under standard of review laid out exactly the test that the plaintiff has argued for in his brief. Oppressive and vexatious out of proportion to any convenience to the plaintiff or the forum is inappropriate because of legal or administrative problems of the court. That's exactly the same test that the plaintiff argued for. So I submit the district court provided the deference that plaintiff says is called for. But as Judge Rogers noted in his earlier question, and this ties to the earlier opinion of the court in Doha, the plaintiff's connection to the U.S. is very attenuated here. And in Doha, the court said it isn't necessary for the district court to make an explicit finding of oppression and vexation, especially when the U.S. connection of the plaintiff is attenuated. The only connection here is the broth act of citizenship and everything else, every tie is in Germany. He's a German resident. You say that a disinterested and not very knowledgeable observer might be a little suspicious that there's some forum shopping going on when you have a German domiciliary wanting his claim to be tried in the United States and an American company wanting its claim to be tried in Germany. Well, Your Honor, both parties obviously look to be in a forum that they think is a forum that will favor their litigation of the case. But there's actually a record here. It's clear in the record that the plaintiff wants to be in a U.S. court because he thinks he's going to get a lot more money from a U.S. jury. They explicitly argue that that was one of the reasons they think Germany is an inadequate forum. But we could also be suspicious that you all want to have it in Germany because you're going to be on the hook for a lot less money. And we may very well be awarded less money against us in Germany. The German law is going to apply in either place and that's going to limit the exposure to some degree. But from our point of view, Your Honor, we can defend this case anywhere in terms of producing evidence because we can take our witnesses anywhere. We can't get the critical witnesses in Germany to a trial here. And that's really the central issue from our point of view.  I'd like to first touch on counsel's statement that there are, quote, debatable issues with regard to the conveniences and the weighing of the conveniences. Again, the standard is that there's a heavy burden on the defendants to prove that the balancing of the private and public interest factors weigh heavily in favor of a trial in a foreign forum. I'm sorry, foreign forum. So the idea that it's debatable leads me to believe that it does not weigh heavily in favor of the foreign forum. With regard to use of 28 U.S.C. 1782 and the plaintiffs being able to, if the case were tried in Germany, obtain evidence in the United States, first it should be noted that that is an alternative to the Hay Convention. We could use the Hay Convention as well. But using 28 U.S.C. 1782 is expensive and would also add to the cost of having to litigate in Germany because you essentially have to bring a lawsuit in, you have to bring an action in the district in which you're looking for evidence. So that just adds to the cost. It also, as far as I'm aware, only permits you to obtain deposition testimony. So in that regard, the party is going to be on similar footing in terms of obtaining testimony from witnesses in the two different forums, whether it's an inconvenience on the plaintiff in Germany having to obtain evidence in the United States or an inconvenience on the defendants here in the U.S. having to use the Hay Convention. They had agreed and submitted themselves to the German court that they would in fact produce their witnesses anywhere. Is that wrong, or was there a tricky caveat to that? Well, Your Honor, to the extent that there's any evidence over which they no longer have control, perhaps a former employee, for example, that might have relevant evidence, the plaintiffs would have to use 1782. Has that been entered in the record in any way, or is that just supposition? I mean, it seemed like up to this point both sides were saying, you know, it's a question of how it was made, how it was manufactured, and we own all those things. Right, Your Honor. In their initial disclosures, the defendant did list one former employee of Ethicon. It's not clear whether they would produce that person voluntarily. If it's in their disclosure, I assume they would. But to the extent that there is any other evidence, the plaintiffs would have to use 1782, just like the defendants would have to use the Hay Convention if the case were tried here. Again, a very important private interest factor to consider is that it's prohibitively cost. The cost of litigating in Germany is prohibitive for the plaintiffs. And as Mr. Heffern set forth in his declaration, he essentially will not be able to bring suit in Germany. And candidly, I believe the defendants are relying on that fact. And as Judge Rogers pointed out, it is interesting that a defendant— Why is it that it's cost prohibitive?  Well, yes, Your Honor. There's that aspect. There is no contingency fee system in Germany. There is a contingency fee system, but it's rarely used. And most of the time, plaintiffs have to retain attorneys and pay the attorney at least 30% to 50% of the cost of litigating up front. Is it illegal to have a contingency fee arrangement with a German lawyer? No, it's not illegal, Your Honor, but it's very rare. It doesn't happen often. And the other main issue— Any high-class American law firm has, if not offices in Germany, people that work with it, aren't they? I'm not up to date on everything that's happening, but every letterhead I get certainly looks like it has offices in any major city in the world. That could be, Your Honor. But our expert who submitted an affidavit with regard to German law said that contingency fee systems for plaintiffs are very rare in Germany. Is there anything in the record that you can point to in which the plaintiffs have presented financial records or other type of affidavits that would indicate they are unable to afford to bring this case in Germany and that without it being tried or presented here in the United States, they would need to drop this case? No, Your Honor. We didn't submit any form of bank statement or— Well, is there any proof of any kind regarding that? Well, Your Honor, the affidavit of our expert who sets forth the specific costs for having to file— That they can't afford it is my question. I know what you're talking about, the costs. It's more expensive, or there are costs. But what about whether or not they can afford to pay those costs? It's just the affidavit that we have from Mr. Hefferon acknowledging those costs, the specific costs that our expert set forth, and saying that he would be unable to pay those costs and bring a lawsuit in Germany. Thank you. Thank you. Thank you, Counsel. That case will be submitted. The remaining cases will be submitted on briefs, and you may adjourn court.